1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARIAH WELLS,                          No.  2:21-cv-00994-CKD

12          Plaintiff,

13      v.                                  ORDER

14   DCI DONOR SERVICES, INC., et al.,

15          Defendants.

16

17          Plaintiff Mariah Wells brings this putative class action against Defendant DCI Donor

18   Services, Inc. ("DCIDS") alleging class violations of the California Labor Code and California's

19   Unfair Competition Law. ECF No. 10 (First Amended Complaint) at 21-31.  On April 2, 2024,

20   Plaintiff moved for preliminary approval of class action settlement. ECF No. 30. Defendant did

21   not oppose the motion. The matter was taken under submission for a decision on the papers.  ECF

22   No. 31.  Following the consent of all parties, this case was reassigned to the Magistrate Judge for

23   all purposes.  ECF No. 35.  For the reasons discussed below, the Court GRANTS Plaintiff's

24   motion for preliminary approval of class action settlement on the terms provided at the conclusion

25   of this order.

26   / / /

27   / / /

28   / / /

                                                    1

1  **I.    BACKGROUND**

2       A.    <u>Factual and Procedural Background</u>

3       On April 30, 2021, Plaintiff brought a putative class action in Sacramento County

4  Superior Court, on behalf of herself and similarly situated employees within the State of

5  California. ECF No. 5-1. On June 3, 2021, Defendant removed the action to the United States

6  District Court for the Eastern District of California and answered the complaint. <u>See</u> ECF Nos. 1,

7  9. On June 30, 2021, Plaintiff filed a First Amended Complaint ("FAC") and added a cause of

8  action under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). ECF

9  No. 10. On July 21, 2021, Defendant filed an answer to the FAC. ECF No. 11.

10      Plaintiff alleges that she was previously employed within the State of California by

11  DCIDS as a non-exempt tissue recovery technician. ECF No. 10 at ¶¶ 15, 17. Plaintiff's duties

12  included traveling to facilities within California harvesting tissue from human donors and safely

13  preserving that tissue. <u>Id.</u> at ¶ 17. Plaintiff was employed by DCIDS from September 30, 2019,

14  until her resignation on October 21, 2021. ECF No. 30-1 at 5.

15      Plaintiff alleges that from 2017 and still ongoing, DCIDS' policies and practices violated

16  and continue to be in violation of California Labor Code and the California Business and

17  Professions Code section 17200, et seq. In addition, Plaintiff, on behalf of herself, and other non-

18  exempt employees in California, in addition to the claims set forth under the California Labor

19  Code and the California Business and Professions Code section 17200, et al., bring a PAGA

20  action and seek penalties for violations of the California Labor Code section 2699, et seq.,

21  including without limitation to sections 204, 210, 226, 226.3, 226.7, 510, 512, 1174, 1185, 1194,

22  1194.2, 1197, 1197.1, 1198, 1198.5, 1199, 2802, 2804, applicable California Wage Order (Cal.

23  Code of Regs., tit. 8 § 11040), and others that may be applicable. ECF No. 10 at ¶¶ 5, 115.

24      Plaintiff's asserted class action claims include: (1) failure to pay all minimum; (2) failure

25  to pay all overtime wages; (3) failure to provide rest periods and pay missed rest periods

26  premiums; (4) failure to provide meal periods and pay missed meal period premiums; (5) failure

27  to maintain accurate employment records; (6) failure to pay wages timely during employment; (7)

28  failure to indemnify all necessary business expenditures; (8) failure to furnish accurate itemized

wage statements; (9) violations of California's Unfair Competition Law under Business and Professions Code §§ 17200 et seq. ECF No. 10 at ¶ 4. The Class Members include "all individuals who are or were employed by Defendant as per diem non-exempt employees in California from April 30, 2017 through the earlier of March 1, 2023 or the date of preliminary approval of the settlement". ECF No. 30-2 at ¶ 3. The PAGA class includes "all individuals who are or were employed by Defendant as per-diem non-exempt employees in California during the PAGA" Period defined as from "April 23, 2020, through the earlier of March 1, 2023, or the date of preliminary approval of the settlement." Id. at ¶¶ 23, 27.

On May 2, 2022, the parties participated in a settlement conference before the undersigned, which did not result in a settlement. ECF No. 23.  After engaging in extensive investigation and discovery, the parties executed a settlement agreement on July 28, 2023. ECF No. 30-2 at 7. On April 2, 2024, Plaintiff moved for preliminary approval of the settlement. ECF No. 30. The motion for preliminary approval of class action settlement (ECF No. 30) is now before the Court.

B.    Terms of the Proposed Settlement Agreement

The Settlement Agreement contains a release of all claims that are factually supported by the FAC against Defendant by the proposed class, who are defined as "all individuals who are or were employed by Defendant as per diem non-exempt employees in California from April 30, 2017 through the earlier of March 1, 2023 or the date of preliminary approval of the settlement". ECF No. 30-2, Exh. A (Settlement Agreement) at ¶ 3. The Agreement sets the PAGA period "from April 23, 2020, through the earlier of March 1, 2023 or the date of preliminary approval of the settlement." Id. at ¶ 27. The proposed class consists of an estimated 40 class members. ECF No. 30-1 at 1, 5.

In return for the release of claims from these individuals, the Settlement Agreement provides for a non-reversionary gross settlement amount of $175,000. Settlement Agreement at ¶ 55(c)-(d). This amount represents, in part, a 75% discount of the potential damages for alleged rest and meal break violations and derivative wage statement claims. Id. at ¶¶ 35, 39, 49. In arguing the settlement is fair, counsel notes that Defendant's defenses and the potentiality the

Court may find little to no harm caused by the alleged violations supported a significant departure

of the amount in damages for settlement purposes. Id. at ¶¶ 35, 39, 49, 53.

The Settlement Agreement proposes deducting from the $175,000 gross settlement

amount the following:

(a)  Class representative incentive award of $5,000;

(b)  Class counsel's attorney fees of up to $52,500 (30% of the gross amount);

(c)  Class counsel's litigation costs of up to $5,000;

(d)  Settlement Administrator costs of up to $4,850; and

(e)  A PAGA payment of $9,375 to be paid to the Labor Workforce and Development Agency

("LWDA") out of an overall PAGA award of $12,500.[1]

Settlement Agreement at ¶¶ 55(c), (e)-(h). The above deductions, if fully approved, would yield a

Net Settlement Fund of $95,150. See id.; see also ECF Nos. 30-1 at 4; 30-2 at ¶ 64.

As proposed, the Net Settlement Fund would be distributed across all class members on a

pro rata basis based on the total number of pay periods worked by the class members during the

class period. Settlement Agreement at ¶¶ 55(e)(ii). The number of pay periods worked by the

class members will be determined by the Settlement Administrator based on employment records

to be provided by Defendant. Id. at ¶ 55(e)(iii). Plaintiff's counsel estimates that the proposed

settlement will provide class members an average recovery of "approximately $2,388." ECF No.

30-1 at 13.[2]

The Settlement Agreement requires the Settlement Administrator to mail out notices of

the class action settlement within 35 days of the Court's preliminary approval. Settlement

Agreement at ¶ 97. It then allows 60 days from the mailing of the proposed Notice of Class

Action Settlement for class members to challenge dates of employment, workweeks, or submit

---

[1] As discussed below, PAGA requires that 75% of PAGA penalties recovered go to the LWDA and 25% to the aggrieved employees. Cal. Lab. Code § 2699(i). Accordingly, the Settlement Agreement directs the remaining $3,125 (25% of $12,500) to be distributed among the PAGA class members, on a pro-rata basis, based on the total number of pay periods worked as a non-exempt employee for Defendant during the PAGA period. Settlement Agreement at ¶ 55(e)(i).
[2] The Court notes by its calculations the estimated amount is closer to $2,379 ($95,150 ÷ 40 = $2,378.75).

written objections or opt-out of the settlement class. Id.; ECF No. 30-2, Exh. 1 at 57-67 (the Class

Notice). Class members who opt out will retain their right to sue but receive no payment under

the settlement; class members who remain in would ultimately receive their portion of the net

settlement award by check. Settlement Agreement at ¶¶ 4, 5, 22, 69; ECF No. 30-2 at 61. The

Settlement Agreement provides PAGA class members receive automatic membership and there is

no opt-out or exclusion option. Settlement Agreement at ¶¶ 23-27; ECF No. 30-2 at 57, 59-60, 62.

The Class Notice also conveys to PAGA class members that the PAGA award is paid

automatically without any required opt-in and releases "Defendant and related entities from any

and all claims that were or could have been brought under PAGA similar to those alleged in the"

lawsuit. ECF No. 30-2 at 62. The Settlement Agreement also contains a procedure for distribution

of the PAGA settlement should a class member opt out to the Rule 23 class settlement, and the

Class Notice informs the class members that opting out of the Rule 23 class does not affect the

PAGA settlement. ECF Nos. 30-1 at ¶¶ 4, 6, 30-2 at ¶¶ 88-95; 30-2 at 57, 59, 61-62.

## II.    DISCUSSION

In the instant motion, Plaintiff seeks an order (1) conditionally certifying the settlement

class and appointing Plaintiff as a class representative and Plaintiff's counsel as class counsel; (2)

preliminarily approving the proposed settlement; and (3) appointment of the settlement

administrator, approval of the notice to class members, and setting a fairness hearing. ECF No.

30-1.

### Legal Standards – Rule 23 Class Settlements and PAGA Settlements

When parties seek approval of a class settlement before class certification, courts must

analyze "both the propriety of the certification and the fairness of the settlement." Staton v.

Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see Fed. R. Civ. P. 23(e) ("The claims, issues, or

defenses of a certified class—or a class proposed to be certified for purposes of settlement—may

be settled, voluntarily dismissed, or compromised only with the court's approval."). Accordingly,

the Court considers whether the proposed class meets the certification requirements, and whether

the proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at

952. At the preliminary approval stage, the Court considers the likelihood that it will ultimately

approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The final approval stage comes after notice to and feedback from the class and a fairness hearing. Fed. R. Civ. P. 23(e)(2).

Although this action largely consists of class claims, it also includes a claim for penalties under PAGA.  PAGA claims are distinct from class claims. See Kim v. Reins Int'l Cal., Inc., 9 Cal. 5th 73, 86-87 (2020) ("[A] representative action under PAGA is not a class action[,]" but rather one "on behalf of the government.") (quotations omitted). This is because "[p]laintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees." Id. (emphases original); see Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1914 (2022) (explaining how California law characterizes PAGA as creating a "type of qui tam action" with the representative private plaintiff acting in place of the government (quoting Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 382 (2014)). Because a PAGA claim is not "a collection of individual claims for relief" like a class action, Canela v. Costco Wholesale Corp., 971 F.3d 845, 855 (9th Cir. 2020) (discussing Kim's holding), PAGA claims "need not satisfy Rule 23 class certification requirements," Hamilton v. Wal-Mart Stores, Inc., 39 F.4th 575, 583 (9th Cir. 2022). However, like class action settlements, PAGA settlements must be approved by the court.  Cal. Lab. Code § 2699(l)(2). Courts in this circuit apply "a Rule 23-like standard," asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

**Analysis**

**A.  Provisional Class Certification under Rule 23(a), (b)(3), and (g)**

Rule 23 establishes five prerequisites for any class certification: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation; and (5) one of the three options under Rule 23(b). See Fed. R. Civ. P. 23(a) and (b); Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). Relevant here, Rule 23(b)(3) states that class action may be maintained only if "questions of law or fact common to class members predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." If the class is certified, the court must appoint class counsel and a class representative. Fed. R. Civ. P. 23(e), (g).

To reiterate, Plaintiff seeks conditional certification of a class defined as "all individuals who are or were employed by Defendant as per diem non-exempt employees in California from April 30, 2017 through the earlier of March 1, 2023 or the date of preliminary approval of the settlement". Settlement Agreement at ¶ 5.

### 1. *Numerosity*

For class certification, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class comprises as few as 39 members, where joining all class members would serve only to impose financial burdens and clog the court's docket. See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit guidance regarding numerosity and listing cases). Plaintiff estimates there are approximately 40 members in the putative class. ECF No. 40-1 at 4. Maintaining this number of individual suits based on the same claims and facts would be impractical. "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." EEOC. v. Kovacevich '5' Farms, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. 2007). Therefore, Plaintiff satisfies the numerosity requirement.

### 2. *Commonality*

Second, there must be "questions of law or fact common to the class" to be certified. Fed. R. Civ. P. 23(a)(2). To satisfy commonality, the class representative must demonstrate that the litigation will "depend upon a common contention ... capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) (quoting Wal-Mart, 564 U.S. at 350).

/ / /

7

Here, Plaintiff contends that common questions of fact and law exist based on the following:

> Here, the claims turn on common working conditions and pay practices. Specifically, the claims to be resolved are those asserted by non-exempt employees who work on an on – call basis, and piece rate basis. All such employees shared the same general working conditions in that they sign meal period waivers because their work involves medical procedures which cannot be interrupted; they are paid a mix of piece rate and hourly rate compensation; and their paystubs contain the same formatting and information categories, specifically the rate of pay for the piece rate work and the rest breaks requires reference to additional documentation.

ECF No. 30-1 at 10-11.

Because the above questions would form the basis of each class member's claims, Plaintiff satisfies the commonality requirement. See Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165–66 (9th Cir. 2014) (finding commonality satisfied when class action claims raised common question of whether the employer had practices or unofficial policies that violated California Labor Code provisions). "Even if individual members of the class will be entitled to different amounts of damages because, for instance, they were denied fewer meal and rest breaks than other employees, 'the presence of individual damages cannot, by itself, defeat class certification.'" Mejia v. Walgreen Co., 2020 WL 6887749, at *4 (E.D. Cal. Nov. 24, 2020) (quoting Leyva, 716 F.3d at 513 and Wal-Mart, 564 U.S. at 362, and finding commonality satisfied where the alleged labor code violations were based on the defendant's policies).

### 3. *Typicality*

The third certification requirement, typicality, is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality test asks, "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (internal quotation omitted). The typicality requirement is a permissive standard: "[class] representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v.

8

1   Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds).

2          Here, Plaintiff's claims are typical of the class because she was a non-exempt employee

3   who "was paid in the same fashion (piece rate and hourly on a twice-monthly basis) and with the

4   same formula (piece rate based upon nature of procedure) as her fellow class members. She and

5   also the other class members worked on an on-call basis and performed medical procedures

6   which typically precluded meal breaks." ECF Nos. 30-1 at 11; 30-2 at ¶ 26 ("Ross Decl.").

7   Plaintiff's claims are reasonably co-extensive of the other class members, and so the typicality

8   requirement is satisfied. Hanlon, 150 F.3d at 1020.

9          **4.   *Adequacy of Representation***

10         To satisfy Rule 23(a)'s final requirement, the representative parties must show they will

11  "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). When analyzing

12  the adequacy of the representation, the court must address two questions: "[a] do the named

13  plaintiffs and their counsel have any conflicts of interest with other class members and [b] will

14  the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

15  Hanlon, 150 F.3d at 1020 (citation omitted). Certification will be denied in instances of "actual

16  fraud, overreaching, or collusion." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 948

17  (9th Cir. 2011) (emphasis in original).

18         **a.   Conflicts of Interest**

19         Based on the declarations, it does not appear that Plaintiff or her counsel have any

20  interests that conflict with the class other than the proposed incentive award. ECF Nos. 30-2; 30-

21  3. See Staton, 327 F.3d at 975-76 (discussing the propriety of incentive awards). Counsels' fee is

22  discussed in Section B.3 below.

23         As to Plaintiff's incentive award, these are "fairly typical in class action cases," and are

24  meant to "compensate class representatives for work done on behalf of the class, to make up for

25  financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

26  willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948,

27  958-59 (9th Cir. 2009). Nevertheless, courts "must be vigilant in scrutinizing all incentive awards

28  to determine whether they destroy the adequacy of the class representatives." Radcliffe v.

9

1  Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). In assessing the

2  reasonableness of incentive awards, the Court considers "the actions the plaintiff has taken to

3  protect the interests of the class, the degree to which the class has benefitted from those actions"

4  and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton, 327

5  F.3d at 977 (citation omitted). The court must balance "the number of named plaintiffs receiving

6  incentive payments, the proportion of the payments relative to the settlement amount, and the size

7  of each payment." Id.

8          The Settlement Agreement proposes an incentive award up to $5,000 for the sole named

9  Plaintiff in this action, Ms. Wells, which amounts to 2.9% of the gross settlement amount of

10  $175,000. ECF No. 30-1 at 14. Percentagewise, such a class representative award is higher than

11  has been granted in other cases. See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc., 2010 WL

12  2486346, at *10 (C.D. Cal. 2010) (collecting cases and concluding that incentive award over 1%

13  of settlement fund, without justification, was excessive); see also Ontiveros v. Zamora, 303

14  F.R.D. 356, 365 (E.D. Cal. 2014) (noting incentive awards equaling even 1% of larger settlements

15  are generally found to be "unusually high"); with Bellinghausen v. Tractor Supply Co., 306

16  F.R.D. 245, 267 (N.D. Cal. 2015) (citing cases demonstrating that incentive awards typically

17  range from $2,000 to $10,000). Given that the parties have not submitted exact figures of what

18  each class member might obtain (instead relying on a formula for the claims administrator to use

19  in determining each class member's award), it is difficult to determine how much larger of an

20  award this would be in comparison to what each class member might receive. In Plaintiff's favor,

21  the Court notes the significant time Plaintiff invested in participating in the case (as opposed to

22  the absent class members). This amount will be considered at the final settlement step. For

23  purposes of provisional certification of the class, the Court does not find the proposed incentive

24  award so disproportionate that it necessarily creates a conflict of interest or renders Plaintiff an

25  inadequate representative.

26          **b.  Vigorous Prosecution**

27          As to the second aspect of the adequacy inquiry, Plaintiff's attorney at Melmed Law

28  Group has extensive experience in litigating complex class actions, including settling wage and

hour class actions in California. ECF No. 30-1 at 11; 30-2 at ¶¶ 9-15, 66. This experience

suggests that counsel can effectively advocate for the proposed class. In the absence of any

further evidence of conflicts, the Court finds Plaintiff's counsel likely to continue vigorously

prosecuting this lawsuit on behalf of the class.

### 5. *Rule 23(b)(3) Requirements*

Plaintiff invokes Rule 23(b)(3), which requires which requires a finding "that the

questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The test of Rule 23(b)(3) is

"far more demanding" than that of Rule 23(a). Amchem Products, Inc. v. Windsor, 521 U.S. 591,

623-24 (1997)). Predominance tests "whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." Id. at 623. Superiority tests whether the class mechanism

is better than other available method, mainly by reducing litigation costs and promoting greater

efficiency. Id. at 620. In a class action settlement, the court need not address whether the case, if

tried, would present issues of manageability under Rule 23(b)(3)(D). Id. at 593.

Here, common questions of law and fact predominate over questions affecting individual

members because Plaintiff alleges that she and all class members were subject to the same

policies and practices regarding meal and rest breaks, timekeeping, timely payment of wages

during employment, and business expense reimbursements. When a class action challenges a

defendant's uniform policies, courts generally find the predominance requirement satisfied. See

Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d 1150, 1154-55 (9th Cir. 2016); Palacios v.

Penny Newman Grain, Inc., 2015 WL 4078135, at *6 (E.D. Cal. July 6, 2015) (finding

predominance where defendants uniformly failed to properly calculate wages and overtime,

provide reimbursements, account for meal and rest periods, and noting there will be individual

issues apart from calculating individual damages).

Because Defendant's liability would turn on a review of its uniform policies and practices,

concentrating litigation of the issues in one lawsuit would be superior to individual actions. See

Amchem, 521 U.S. at 620. Further, when class members' individual recoveries might be less in

11

1   separate suits, the class members' individual interests generally favor certification rather than

2   individual prosecution. <u>Zinser v. Accufix Res. Inst., Inc.</u>, 253 F.3d 1180, 1190 (9th Cir. 2001);

3   <u>see</u> Fed. R. Civ. P. 23(b)(3)(A) (one factor in superiority determination is class members'

4   interests in bringing separate actions); <u>Amchem</u>, 521 U.S. at 617 (Rule 23(b)(3) serves to

5   vindicate "the rights of groups of people who individually would be without effective strength to

6   bring their opponents into court at all"); <u>see</u> Fed. R. Civ. P. 23(b)(3)(B) (superiority determination

7   also considers "extent and nature of any litigation concerning the controversy already begun by or

8   against class members").[3] Thus, common questions predominate, and a class action is a superior

9   vehicle for adjudicating the dispute.

### 6. *Appointment of Class Representative & Class Counsel*

11      In sum, because the Court finds Rule 23(a)'s and Rule 23(b)(3)'s requirements are met,

12   the class is provisionally certified for settlement purposes. Additionally, the Court provisionally

13   appoints Plaintiff Mariah Wells as class representative. Plaintiff's interests align with those of the

14   unnamed class members, and (as discussed above) there do not appear to be any conflicts of

15   interest sufficient to render her an inappropriate class representative.

16      "[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1).

17   When appointing class counsel, a court must consider "(i) the work counsel has done in

18   identifying or investigating potential claims in the action; (ii) counsel's experience in handling

19   class actions, other complex litigation, and the types of claims asserted in the action; (iii)

20   counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

21   representing the class." Fed. R. Civ. P. 23(g)(1)(A).

22      Plaintiff moves for an appointment of Megan E. Ross of Melmed Law Group, P.C. as

23   Class Counsel. Plaintiff states she has conferred with counsel throughout this litigation, which

24   implicitly supports such a motion. ECF No. 30-3 at ¶¶ 6, 8-10. The Court concludes that

25   provisional designation of Megan E. Ross is appropriate. As noted above, counsel is experienced

26

27   [3] The other two factors for superiority (desirability of concentrating litigation in this forum, and
     difficulty of managing the class action, Fed. R. Civ. P. 23(b)(3)(C) & (D)) do not apply when the
28   action settles before class certification. <u>See</u> <u>Mejia</u>, 2020 WL 6887749, at *6.

12

in litigating class action cases, including wage and hour class actions, and appears to have

advanced Plaintiff's position, investigated the claims thoroughly, and engaged in discovery prior

to settlement. (See, generally, ECF Nos. 30-1 and 30-2.) Based on her previous efforts, the Court

anticipates counsel will continue to devote appropriate resources to represent the class. For these

reasons, the Court provisionally designates Plaintiff's counsel as class counsel.

### B. Preliminary Approval of Proposed Settlement

Settlement of a class action must be "fair, reasonable, and adequate." Fed. R. Civ. P.

23(e)(2). Preliminary approval is appropriate when "the court will likely be able to" give final

approval. Fed. R. Civ. P. 23(e)(1)(B). Any fairness determination requires the court to "focus[ ]

primarily upon whether the particular aspects of the decree that directly lend themselves to

pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees

and the distribution of any relief, particularly monetary relief, among class members—strictly

comport with substantive and procedural standards designed to protect the interests of class

members." Staton, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than

assessing its individual components." Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir.

2012). Because the parties negotiated this settlement before any class was certified, the court

applies a "more probing inquiry" to ensure the fairness of the proposed settlement. Roes, 1-2 v.

SFBSC Mgmt., LLC, 944 F.3d 1035, 1048 (9th Cir. 2019) (quotations omitted).

In reviewing whether the proposed settlement is fair, reasonable, and accurate, Rule 23

requires the court to consider whether: (1) the class representatives and class counsel have

adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief

provided for the class is adequate; and (4) the proposal treats class members equitably relative to

each other. Fed. R. Civ. P. 23(e)(2).

For the following reasons, the Settlement Agreement appears fair, reasonable, and

adequate, and so is preliminarily approved under Rule 23(e) as to the class claims.

### 1. *Adequacy of Representation*

The first factor, whether "the class representatives and class counsel have adequately

represented the class," Fed. R. Civ. P. 23(e)(2)(A), is redundant of Rule 23(a)(4). Mejia, 2020

13

WL 6887749, at *9 (quotation omitted). The court preliminarily finds that the class

representatives and class counsel adequately represent the class for purposes of Rule 23(e)(2)(A).

### 2. *Arm's Length Negotiation*

The second factor requires the court to consider whether the proposed settlement was

negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the proposed settlement is the

product of extensive investigation and discovery, including months of negotiations between the

parties and a settlement conference in June of 2022. ECF No. 30-1 at 12. Thus, the Court

preliminary finds that this factor is satisfied. See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939,

942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to

a degree of deference as the private consensual decision of the parties").

### 3. *Adequacy of Relief Provided to the Class*

The adequacy of relief determination requires consideration of four sub-factors: (i) the

costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims; (iii) the

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3). See Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

The amount offered in the proposed settlement agreement is generally the most important

consideration of any class settlement. See Bayat v. Bank of the West, 2015 WL 1744342, at *4

(N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir.

2013)).

In determining whether the amount offered is fair and reasonable, courts compare the

proposed settlement to the best possible outcome for the class. See Rodriguez, 563 F.3d at 964.

Here, the parties agreed to settle this case for a non-reversionary sum of $175,000, inclusive of

the PAGA payments. Settlement Agreement at ¶ 19. After deductions for an incentive award,

attorneys' fees, litigation costs, settlement administrator fees, and the PAGA payment to the

LWDA (assuming full approval for all), the Court calculates a Net Settlement Fund of $95,150.

ECF Nos. 30-1 at 4; 30-2 at ¶¶ 55(c)-(h). The proposed settlement roughly results in an average

recovery of $2,379 per class member, but this of course will vary depending on the number of

14

workweeks each class member actually worked, as each class member's award will be calculated as a proportional share of the net settlement amount. See id. The proposed settlement appears fair, reasonable, and adequate given the parties' understanding of the strength and weaknesses of their positions after engaging in significant negotiations, discovery and investigation. See ECF No. 30-2 at ¶¶ 63,65-66, 69. However, in order to fully evaluate the reasonableness of the parties' understanding in this respect, the Court will direct parties to include further explanation in their Final Approval motion as to the potential maximum relief in this action if damages and full penalties were to be found cognizable for purposes of assessing whether the settlement amount results in a recovery that is in range of settlements that been approved by California courts.

Under the Settlement Agreement, class members will not have to submit claims to receive payment; instead, they will be identified through Defendant's employment records; the Settlement Administrator will search for class members' most recent address through searches and by skip tracing; and class members will receive the settlement payment by mail unless they opt out of the settlement. Settlement Agreement at ¶¶ 59-62. Each class member's share will be calculated based on how many workweeks they worked during the class period, which can be readily determined by Defendant's employment records, and which will be stated on the Class Notice; class members will also have an opportunity to challenge errors relating to the number of workweeks calculated on the Notice. ECF No. 30-1, Exh. 1 at 59-61, 65-67. This method of distributing relief is "simple and effective." Loreto v. Gen. Dynamics Info. Tech., Inc., 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021).

The Settlement Agreement also provides that class counsel will request attorney's fees up to 30% percent of the gross settlement amount, at $52,500. Settlement Agreement at ¶ 3; ECF No. 30-1 at 14. In settlements that produce a common fund, courts may use either the lodestar method or percentage-of-recovery method to determine the reasonableness of attorney's fees. In re Bluetooth, 654 F.3d at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." Id. However, a departure may be justified based on "special circumstances." Id.

/ / /

15

Given that class counsel eventually will move separately for attorney's fees and costs under Rule 23(h), the Court need not determine at the preliminary approval stage whether a 30% award is reasonable. For now, counsel's anticipated request is not so disproportionate to the relief provided to the class that it "calls into question the fairness of the proposed settlement." Pokorny v. Quixtar Inc., 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).

In the forthcoming Rule 23(h) motion, class counsel will be expected to fully substantiate the justification for an attorney's fees award—especially a request exceeding the 25% benchmark. See In re Bluetooth, 654 F.3d at 942 (stating that district courts should "award only that amount of fees that is reasonable in relation to the results obtained"). Counsel shall address factors such as "(1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyer's reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." Mejia, 2020 WL 6887749, at *10 (quotation omitted). Counsel shall brief the fee application using the lodestar method as a cross-check, which will assist the court in confirming the reasonableness of the requested fees. For this cross check, counsel shall note the differences in the prevailing rates between the Eastern District of California and other districts when submitting their motion.

Lastly, Plaintiff identifies no other agreements made in connection with the proposed settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). This weighs in favor of approving the settlement.

### 4. *Equitable Treatment of Class Members*

The fourth factor addresses whether the proposed settlement agreement "treats class members equitably relative to each other." See Fed. R. Civ. P. 23(e)(2)(D). This inquiry considers both (i) equity across sub-categories, or segments, of the class, and (ii) equity between class representatives and unnamed class members.

The Settlement Agreement does not overtly discriminate between any segments of the class. As described in the Settlement Agreement, the parties have devised a formula that portions

16

each class member's recovery based on the number of total weeks worked in both the Rule 23 and PAGA periods. Settlement Agreement at ¶¶ 3, 23, 27. As to equitable treatment between the class representative and the class members, the Court incorporates its above discussion regarding the incentive award. Given that the Court retains discretion to award a lower amount depending on the briefing provided at the final approval stage, this is not a source of impermissible inequity.

### C.  Settlement of PAGA Penalties Claim

Plaintiff's tenth cause of action in her FAC asserts a claim for PAGA penalties, on behalf of Plaintiff and all aggrieved employees, for civil penalties associated with the Labor Code violations asserted in the class claims. ECF No. 10 at 29-31. As discussed at the outset, PAGA claims and their settlement are fundamentally distinct from Rule 23 class claims. See Hamilton, 39 F.4th at 583 ("Rule 23 class actions and PAGA actions are so conceptually distinct that class action precepts generally have little salience for PAGA actions."); Canela, 971 F.3d at 852 (noting "the different remedial schemes that exist in Rule 23 class actions and PAGA suits").

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a). "Plaintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees." Kim, 9 Cal. 5th at 87 (emphasis in original). Because a PAGA plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." Arias v. Superior Ct., 46 Cal. 4th 969, 986 (2009). "Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim." Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (4th Dist. 2021) (internal quotes omitted). Thus, a PAGA plaintiff owes a duty both to their "fellow aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to the public at large because "they act, as the statute's name suggests, as a private attorney general." O'Connor v. Uber Techs., Inc., 201 F.Supp. 3d 1110, 1133–34 (N.D. Cal. 2016).

Under PAGA's remedial scheme, civil penalties recovered are distributed between "the aggrieved employees" (25%) and the LWDA (75%). Cal. Lab. Code § 2699(i). Any settlement of

1   PAGA claims must be approved by the court; and the proposed settlement must also be sent to the

2   LWDA at the same time it is submitted to the court.[4] Cal. Lab. Code § 2699(l)(2).

3      Although the court does not evaluate the settlement of PAGA claims under the Rule 23

4   criteria, it must still inquire into the fairness of the PAGA settlement. "[I]n reviewing a settlement

5   that includes both a Rule 23 class and a PAGA claim, the court must closely examine both

6   aspects of the settlement." O'Connor, 201 F. Supp. 3d at 1133 (emphasis in original). Based on

7   the best guidance at hand—from the LWDA's input in O'Connor, in the absence of a definitive

8   governing standard—district courts typically apply "a Rule 23-like standard" asking whether the

9   settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." Haralson, 383

10   F. Supp. 3d at 972; see Mondrian v. Trius Trucking, Inc., 2022 WL 2306963, at *7 (E.D. Cal.

11   2022) (noting lack of binding standard for approving PAGA settlements and adopting

12   "fundamentally fair, reasonable, and adequate" standard based on LWDA's O'Connor

13   commentary).

14      "While a proposed settlement must be viewed as a whole, the [c]ourt must evaluate the

15   adequacy of compensation to the class as well as the adequacy of the settlement in view of the

16   purposes and policies of PAGA. In doing so, the court may apply a sliding scale." O'Connor, 201

17   F. Supp. 3d at 1134 (cleaned up). "For example, if the settlement for the Rule 23 class is robust,

18   the purposes of PAGA may be concurrently fulfilled." Id. Non-monetary relief provided through

19   the settlement may also satisfy PAGA's interests in enforcement and deterrence. Id. at 1134-35.

20   Conversely, in cases where a settlement provides "relatively modest" amounts in settlement of the

21   class claims compared to their verdict value, and there is no non-monetary relief provided, the

22   PAGA aspect of the settlement must stand on its own to "substantially vindicate" PAGA's policy

23   interests. Id. at 1135.

24      The Settlement Agreement provides for $12,500 in PAGA penalties, out of the gross

25   settlement amount of $175,000. Settlement Agreement at ¶55(e). Class counsel estimates, on the

---

[4] Plaintiff provides a letter from her counsel to the LWDA providing written notice of the suit on April 23, 2021, at the inception of this case. ECF No. 30-2, Exh. C at 73-75 ("LWDA Notice"). It appears LWDA did not respond. Counsel provided the LWDA a copy of the settlement agreement on April 2, 2024. ECF No. 30-2 at 21; 77.

high end, that PAGA penalties at trial could be as much as $57,600 if calculated at $100 per initial violation and $200 per subsequent violation. ECF No. 30-2 at 13-14. However, the Court concurs with counsel's assessment regarding the uncertainty of the case and notes the cases cited in counsel's declaration indicating PAGA penalty assessments at a fraction of that amount. See, e.g., Carrington v. Starbucks Corp., 30 Cal. App. 5th 504, 529 (2018) (noting the trial court's discretionary authority to award lesser penalties where defendant exercised a good faith attempt to comply with the Labor Code and affirming the trial court's award of $5 per violation). While the Court would not describe the potential individual payments to class members as "robust," the Court is persuaded that PAGA's interests are satisfied given the difficulties Plaintiff would have in litigating this case through trial and given the parties' negotiation efforts after significant discovery and investigation. O'Connor, 201 F. Supp. 3d at 1134.

Considering the other factors from Rule 23(e)(2), the Court finds the PAGA portion of the settlement to be similarly fair and adequate for the PAGA members. Though the PAGA payment will be much lower than the Rule 23 payments, this will ultimately benefit the class members, as PAGA's 75%/25% allocation would only shift funds away from the class members—who appear to be the same set of individuals as the PAGA members. See Rodriguez v. Danell Custom Harvesting, LLC, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving 0.6% PAGA payment because LWDA did not object to terms of settlement). The Court also takes the LWDA's decision to not comment on the settlement after being notified thereof as implicit approval of the parties' agreement. See Mancini v. W. & S. Life Ins. Co., 2018 WL 4489590, at *2 (S.D. Cal. 2018) (taking LWDA's "acquiescence as indication that the settlement is presumptively reasonable"). Finally, the parties have accounted for the distinction between Rule 23 opt outs and PAGA's inability to do so, as the settlement agreement and notice inform as much. Uribe v. Crown Bldg. Maint. Co., 70 Cal. App. 5th 986, 1001 (4th Dist. 2021), as modified on denial of reh'g (Oct. 26, 2021) ("A defining feature of the class action procedure is that a class member may opt out of the class if he or she does not wish to be bound by the result of the suit .... PAGA actions do not afford the same opt out feature.") (cleaned up); Amaro, 69 Cal. App. 5th at 541 n.5 ("Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim.");

Rutter, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 14-C [14:134.1] ("There is no mechanism by which an aggrieved employee can 'opt out' of a PAGA claim." (citation omitted)).

For these reasons, the Court finds the settlement of the PAGA Penalties claim to be fundamentally fair, reasonable, and adequate." See Haralson, 383 F. Supp. 3d at 972.

### D.  Settlement Administrator; Notice to Class/PAGA Members; Fairness Hearing

#### 1.  *Settlement Administrator*

To ultimately approve a class action settlement, a district court must ensure class members were notified of the proceedings, had the opportunity to opt out or (for those who remain in the settlement) object to any of the settlement's terms, and were provided the chance to appear at fairness hearing. Fed. R. Civ. P. 23(e)(1)-(5). To effectuate these procedures, the parties have agreed to retain ILYM Group, Inc. to handle the notice and settlement administration process. Settlement Agreement at ¶¶ 35, 56. The Court approves.

#### 2.  *Notice to Class Members*

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); see Hanlon, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For settlements under Rule 23(b)(3), the court is required to:

> [D]irect to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, [by] United States mail, electronic means, or other appropriate means, [concerning] the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members ....

Fed. R. Civ. P. 23(b)(3); see also Fed. R. Civ. P. 23(e)(4) and (5) (requiring the court provide class members with an opportunity to be excluded from the settlement or object to the terms). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal

1  quotations and citations omitted).

2        Here, the Class Notice generally describes the terms of the settlement and provides a link

3  to a forthcoming website that will contain documents from the Court's docket. The form allots

4  space to notify each class member of how many workweeks they worked and what their estimated

5  total award will be—properly distinguishing between the Rule 23 and PAGA workweeks. The

6  Class Notice also provides the class members with the amounts they will be awarded for each

7  segment of the settlement, properly distinguishing between the Rule 23 award and the PAGA

8  award. ECF No. 30-2, Exh. 1.

9        The Settlement Agreement requires the Settlement Administrator to mail out notices of

10 the class action settlement within 35 days of the Court's preliminary approval. Settlement

11 Agreement at ¶¶ 59-60. It then allows 60 days from the mailing of the proposed "Notice of

12 Pendency of Class and Representative Action and Proposed Settlement" for class members to (a)

13 opt out of the settlement, (b) object to the terms of the settlement, or (c) dispute their dates of

14 employment and estimated recovery amount listed on the Notice. Id. at ¶ 64; ECF No. 30-2, Exh.

15 1 at 57, 61-63, 66. The Settlement Agreement provides that those who opt out will retain their

16 right to sue but receive no payment, while those who do not opt out will ultimately receive their

17 Settlement Payments. Settlement Agreement at ¶¶ 5-6, 22, 36, 74-82. The Settlement Agreement

18 contains a procedure for distribution of the PAGA payment and the Class Notice informs the

19 potential class member that there is no opt-out option in the PAGA settlement. Id. at ¶¶ 25-26;

20 ECF No. 30-2, Exh. 1 at 59, 62. Finally, a space notifying the class members of the date and time

21 of the Court's Fairness Hearing is properly provided. ECF No. 30-2, Exh. 1 at 63. The Court

22 approves of the Class Notice and schedule noted therein. According, the notice meets the

23 requirements of Rule 23(b)(3) and 23(e)(4) and (5), as well as relevant case law. Churchill Vill.,

24 561 F.3d at 575.

25            **3.  *Further Scheduling and the Fairness Hearing***

26       "Courts have long recognized that settlement class actions present unique due process

27 concerns for absent class members." In re Bluetooth, 654 F.3d at 946 (cleaned up). To protect the

28 rights of absent class members, Rule 23(e) requires the court approve such settlements "only after

a fairness hearing ...." Id.; Rule 23(e)(2).

For clarity, the court now reiterates the remaining deadlines as per in the Settlement Agreement, the Class Notice, and the parties' proposed order. See ECF Nos. 30-2, Exh. A; 30-2, Exh. 1; 30-4.

| | |
|---|---|
| Deadline for Defendant to provide the Settlement Administrator the most recent names, mailing addresses, phone numbers, and Social Security numbers it has for all Class Members, as well as any information regarding the Class Members' dates of employment and leaves of absence. | **October 22, 2024** |
| Deadline for mailing of Class Notices by Settlement Administrator. | **November 11, 2024** |
| Last day for Class Members opt out, submit written objections to the court, or dispute the workweeks calculated. | ***Within 60 days after the mailing (or remailing) of the Class Notice*** |
| Last day for Plaintiff to request final approval of the settlement agreement, attorneys' fees, and incentive award. | **January 27, 2025** |
| Last day for Settlement Administrator to Provide Class Counsel with Declaration of Due Diligence | **January 27, 2025** |
| Fairness Hearing Date (Courtroom 24). | **March 19, 2025 at 10:00 a.m.** |

## <u>ORDER</u>

For the above reasons, it is HEREBY ORDERED that:

1.     Plaintiff's unopposed motion for conditional class certification and preliminary approval of settlement (ECF No. 30) is GRANTED;

2.     As defined above and for purposes of settlement only, the Rule 23 class is

provisionally certified, Plaintiff Mariah Wells is appointed class representative, and Megan E. Ross is appointed class counsel;

3.      ILYM Group, Inc. is appointed Settlement Administrator for this class action settlement;

4.      The Settlement Agreement (ECF No. 30-2, Exh. A) is preliminarily approved as fair, reasonable, and adequate;

5.      The parties' plan for notice to the class is the best notice practicable and satisfies the due process concerns of Rule 23; and

6.      The parties shall follow the deadlines set herein, as delineated by the Settlement Agreement.  A fairness hearing is scheduled for March 19, 2025, at 10:00 a.m., in Courtroom 24 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814.

Dated:  October 7, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4, well0994.21