1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARIAH WELLS,                          No.  2:21-cv-00994-CKD

12              Plaintiff,

13        v.                                ORDER GRANTING FINAL APPROVAL OF
                                            CLASS ACTION SETTLEMENT
14   DCI DONOR SERVICES, INC., et al.,
                                            (ECF No. 43)
15              Defendants.

16

17          This matter came before the Court on July 16, 2025, for a hearing on the unopposed

18   motion for final approval of a class action settlement filed on behalf of plaintiff Mariah Wells.

19   (ECF No. 43.) Following the consent of all parties, this case was reassigned to the Magistrate

20   Judge for all purposes. (ECF No. 33-35.) Plaintiff brings this putative class action against

21   Defendant DCI Donor Services, Inc. alleging class violations of the California Labor Code and

22   California's Unfair Competition Law. (ECF No. 10 at 21-31.) Attorney Hannah Becker appeared

23   by video on behalf of plaintiff and the putative class. Attorney Zachary Rankin appeared by video

24   on behalf of defendant. For the reasons discussed below, the Court GRANTS Plaintiff's motion

25   for final approval of class action settlement.

26   **I.      BACKGROUND**

27          The Court previously summarized plaintiff's allegations in its October 7, 2024, order

28   granting plaintiff's motion for preliminary approval of class action settlement. (ECF No. 37.) The

Court will not repeat that factual background in this order. On February 4, 2025, the Court granted the parties' stipulation to amend the October 7, 2024, order. (ECF No. 42.)

On May 23, 2025, plaintiff filed the pending unopposed motion for final approval of the parties' class action settlement. (ECF No. 43.) As of the date of the hearing on July 16, 2025, no objections to the settlement had been received or filed with the Court, and no class members have opted out of the settlement. (ECF No. 43-1 at 6.)

As summarized by the Court it its order granting preliminary approval of the parties' settlement, the settlement agreement provides for a settlement payment made by defendant in the amount of $175,000. (ECF No. 37 at 14.) Assuming the parties' proposed allocations are awarded in full, approximately $97,561.99 will be available for distribution to the participating class members. (ECF No. 43-1 at 5.)

## II.    FINAL CERTIFICATION OF SETTLEMENT CLASS

On October 7, 2024, the Court granted plaintiff's motion for class certification. (ECF No. 37.) On February 4, 2025, pursuant to the parties' stipulation, the Court granted an order amending the October 7, 2024, order to modify the definition of "class" and "PAGA (Private Attorneys General Act) class" to match the parties amended settlement agreement. (See ECF No. 42.) Specifically, the Court certified the following class: "all individuals who are or were employed by Defendant as per diem piece rate non-exempt employees in California from April 30, 2017 through the earlier of March 1, 2023 or the date of preliminary approval of the settlement (the 'Class Settlement Period')"; and PAGA class: "all individuals who are or were employed by Defendant as per diem piece rate non-exempt employees in California during the PAGA Settlement Period." (ECF No. 42 at 5; see ECF No. 37 at 3, 7.) The Court also appointed plaintiff Mariah Wells as class representative (ECF No. 37 at 12); Megan E. Ross of Melmed Law Group, P.C. as class counsel (id. at 12-13); and ILYM Group, Inc. as settlement administrator (id. at 20).

While plaintiff does not specifically address this in their motion, it appears that plaintiff seeks to substitute attorneys Jonathan Melmed, Laura Supanich, and Hannah Becker of Melmed Law Group, P.C. as class counsel to replace Megan E. Ross. (ECF No. 43 at ¶ 3.) In Jonathan

Melmed's declaration attached to the motion, he states that Ms. Ross is no longer an attorney at the firm. (ECF No. 43-3 at ¶ 26.) "[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). When appointing class counsel, a court must consider (i) "the work counsel has done in identifying or investigating potential claims in the action"; (ii) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (iii) "counsel's knowledge of the applicable law"; and (iv) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

At the hearing, the Court asked plaintiff's counsel to address Ms. Supanich's qualifications, as they were not included in the motion. Plaintiff's counsel stated that plaintiff had no objection if class counsel was only Mr. Melmed and Ms. Becker. Therefore, the Court will consider Mr. Melmed and Ms. Becker's qualifications. At the hearing, plaintiff's counsel stated that Mr. Melmed has been involved with this case since the beginning. Mr. Melmed states in his declaration that he has significant experience regarding the obligations and burdens of representing a class. (ECF No. 43-3 at ¶ 7.) He represents thousands of employees in wage and hour class actions and other employment related matters. (Id. ¶ 10.) Attached to the declaration is an extensive list of class action cases representing employees that have been approved. (Id. at 46-57.) In the motion for preliminary approval, Ms. Ross stated that she "along with the other attorneys and legal staff at [her] firm, have diligently investigated and prosecuted this case to a successful conclusion." (ECF No. 30-2 at ¶ 15 (emphasis added).) Further, Mr. Melmed states in his declaration that Ms. Becker has been practicing labor and employment law at Melmed Law Group since 2022. (ECF No. 43-3 at ¶ 27.)

At the hearing, the parties agreed that it was unnecessary to amend the settlement agreement to reflect this change. The Court finds it appropriate to substitute Mr. Melmed and Ms. Becker as class counsel.

Because no additional substantive issues concerning the certification have been raised, the Court does not repeat its prior analysis here, and the Court's prior appointments, with the exception of class counsel, are confirmed for settlement purposes.

////

1    **III.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

2         Class actions require the approval of the district court prior to settlement. Fed. R. Civ. P.

3    23(e). To approve a settlement, a district court must: (i) ensure notice is sent to all class members;

4    (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate;

5    (iii) confirm that the parties seeking approval file a statement identifying the settlement

6    agreement; and (iv) be shown that class members were given an opportunity to object. Fed. R.

7    Civ. P. 23(e)(1)-(5). The settlement agreement in this action was previously filed on the court's

8    docket (see ECF No. 41 (Settlement Agreement)), and class members have been given an

9    opportunity to object. The Court now turns to the adequacy of notice and its review of the

10   settlement following the final fairness hearing.

11        **A.    Notice**

12        Adequate notice of the class settlement must be provided under Rule 23(e). Hanlon v.

13   Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998); see also Silber v. Mabon, 18 F.3d 1449,

14   1453-54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual

15   notice, only that "best practicable notice" is given); Winans v. Emeritus Corp., 2016 WL 107574,

16   at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach

17   all class members, it does not require that each individual actually receive notice."). "Notice is

18   satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

19   with adverse viewpoints to investigate and to come forward and be heard.'" Churchill Vill.,

20   L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. Tucson Sch. Dist.

21   No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should

22   alert class members of "the opportunity to opt-out and individually pursue any state law remedies

23   that might provide a better opportunity for recovery." Hanlon, 150 F.3d at 1025.

24        The Court previously reviewed the notice provided in this case at the preliminary approval

25   stage and found it to be satisfactory. (ECF No. 37 at 20-21.) Following grant of preliminary

26   approval, the Settlement Administrator processed and updated the address through the National

27   Change of Address Database maintained by the United States Postal Service. (ECF No. 43-1 at 8;

28

ECF No. 47 ¶ 6 (Declaration of Garvin Brown)[1].) If a notice packet was returned, the Settlement Administrator performed a computerized skip trace to obtain an updated address. (ECF No. 43-1 at 8; ECF No. 47 ¶ 8.) Four notice packets were returned, but none included a forwarding address. (ECF No. 47 ¶ 8.) No notice packets have been deemed undeliverable. (ECF No. 43-1 at 8; ECF No. 47 ¶ 10.) The Settlement Administrator mailed the class notice to the 38 class members. (ECF No. 43-1 at 8.) All 38 class members are estimated to have received actual notice of the settlement.

Given the above, the court accepts the reports of the settlement administrator and finds adequate notice has been provided, thereby satisfying Federal Rule of Civil Procedure 23(e)(1). Silber, 18 F.3d at 1453-54; Winans, 2016 WL 107574, at *3.

### B.    Final Fairness Determination

As noted above, on July 16, 2025, the Court held a final fairness hearing, at which class counsel and defense counsel appeared by video. The Court now must determine whether the settlement is fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). At the final approval stage, the primary inquiry is whether the proposed settlement is fundamentally "fair, reasonable, and adequate." Lane v. Facebook, Inc., 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)); Hanlon, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citing Officers for Justice v. Civil Serv. Comm'n of S.F., 688 F.2d 615, 628 (9th Cir. 1982)); see also Lane, 696 F.3d at 818-19. Having already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. See, e.g., In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008); Churchill Vill., 361 F.3d at 576; Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Officers for Justice, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants,

---

[1]  The Declaration of Garvin Brown was missing from the motion for final approval of class action settlement. Pursuant to the Court's July 18, 2025 minute order (ECF No. 46), this declaration was filed on July 22, 2025 (ECF No. 47).

and their strategies, positions and proof." Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003) (quoting Hanlon, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Churchill Vill., 361 F.3d at 575; see also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 944 (9th Cir. 2015).

These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. Churchill Vill., 361 F.3d at 576 n.7.

However, the Ninth Circuit has found that consideration of the Churchill factors alone is not sufficient to survive appellate review. See Briseño v. Henderson, 998 F.3d 1014, 1022–26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires district courts "to go beyond our precedent" and mandates consideration of "the Bluetooth factors" to all class action settlements, regardless of whether settlement was achieved before or after class certification); see also Fed. R. Civ. P. 23(e)(2)(C)-(D). Under the revised Rule 23(e), "district courts must apply the Bluetooth factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members being shortchanged." Briseño, 998 F.3d at 1026. The so-called Bluetooth factors—also referred to as "subtle signs" of collusion—include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorneys' fees sought; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted). "The presence of these three signs is not a death knell—but when they exist, 'they require[ ] the district

1  court to examine them, ... develop the record to support its final approval decision,' and thereby

2  'assure itself that the fees awarded in the agreement were not unreasonably high.' " Kim v.

3  Allison, 8 F.4th 1170, 1180 (9th Cir. 2021) (quoting Allen v. Bedolla, 787 F.3d 1218, 1224 (9th

4  Cir. 2015)) (alterations in original). Thus, while this court has wide latitude in determining

5  whether a settlement is substantively fair, it is held to a higher procedural standard, and in order

6  "[t]o survive appellate review . . . [it] must show it has explored comprehensively all factors, and

7  must give a reasoned response to all non-frivolous objections." McKinney-Drobnis v. Oreshack,

8  16 F.4th 594, 606 (9th Cir. 2021) (quoting Allen, 787 F.3d at 1223-24).

9  **1.    Strength of Plaintiff's Case**

10    When assessing the strength of a plaintiff's case, the court does not reach "any ultimate

11  conclusions regarding the contested issues of fact and law that underlie the merits of th[e]

12  litigation." In re Wash. Pub. Power Supply Sys. Sec. Litig., 720 F. Supp. 1379, 1388 (D. Ariz.

13  1989). The court cannot reach such a conclusion because evidence has not been fully presented.

14  Id. Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the

15  litigation and the impact of those considerations on the parties' decisions to reach these

16  agreements." Id.

17    In the motion for preliminary approval of the class settlement, plaintiff asserted that

18  proceeding after reaching a settlement would have resulted in potential poor results for all

19  putative class members and it would have been difficult to establish any common Labor Code

20  violations suffered by defendant's non-exempt employees paid on an hourly basis. (ECF No. 30-1

21  at 12-13.) Defendant maintains "that it has complied with California law in all respects, denies all

22  liability of any kind associated with the claims and allegations, and further denies that Employees

23  are entitled to any relief. (ECF No. 43-1 at 12.) Defendant denied that the allegations are

24  appropriate for class or representative treatment for any purpose other than the settlement and

25  argues that its realistic exposure was effectively $0. (Id.)

26    Accordingly, the Court finds that consideration of this factor weighs in favor of granting

27  final approval of the parties' settlement in this action.

28  ////

1            **2.**      **Risk, Expense, Complexity, and Likely Duration of Further**

2                  **Litigation**

3       When considering whether the relief for the class is "adequate," the court must take into

4 account "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). "[T]here is

5 a strong judicial policy that favors settlements, particularly where complex class action litigation

6 is concerned." In re Syncor ERISA Litig., 516 F.3d at 1101. As a result, "[a]pproval of settlement

7 is preferable to lengthy and expensive litigation with uncertain results." Johnson v. Shaffer, 2016

8 WL 3027744, at \*4 (E.D. Cal. May 27, 2016) (citing Morales v. Stevco, Inc., 2011 WL 5511767,

9 at \*10 (E.D. Cal. Nov. 10, 2011)).

10       Because of the "hotly-contested" nature of the claims, the plaintiff asserts that the

11 settlement agreement represents a fair compromise given the risks and uncertainties presented by

12 continued litigation. (ECF No. 43-1 at 12.) Defendant asserted and would have continued to assert

13 legal and factual grounds to defend against this action. (Id.) Plaintiff asserts that continued

14 litigation would be costly, time consuming, and uncertain, and that the settlement agreement will

15 ensure "timely relief and a substantial recovery of the amounts that Plaintiff contends are owed to

16 the Class Members." (Id.) Because the information before the Court suggests that there would be

17 risk and expense in seeking to prove plaintiff's case at trial, consideration of this factor also

18 weighs in favor of granting final approval.

19            **3.**      **Risk of Maintaining Class Action Status Throughout Trial**

20       Plaintiff does not specifically address this factor, but states that defendant "denies that

21 these allegations are appropriate for class or representative treatment for any purpose other than

22 settlement." (ECF No. 43-1 at 12.) Based on this, there appears to be some risk that plaintiff

23 would not be able to maintain a class action through trial. Thus, consideration of this factor also

24 weighs in favor of granting final approval.

25            **4.**      **Amount Offered in Settlement**

26       To evaluate the fairness of the settlement award, the court should "compare the terms of

27 the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders

28 of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968); see also Fed. R. Civ. P

23(e)(2)(C)-(D). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiff['s] expected recovery balanced against the value of the settlement offer." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078-80 (N.D. Cal. 2007) (citations omitted). In addition, the court must consider whether "the proposal treats class members equitably relative to each other" and whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C)-(D).

Here, the parties have agreed to a $175,000 gross settlement, allocated as follows: (1) up to $52,500 for attorney's fees and $2,588.01[2] in litigation costs expenses; (2) $5,000 class representative service award for plaintiff; (3) $4,850 for the settlement administration costs; and (4) $12,500 in civil penalties under the PAGA, with $9,375.00 paid to the California Labor and Workforce Development Agency ("LWDA"); and (5) the remainder of the funds being allocated to the net settlement fund. (ECF No. 41-1[3] ("Settlement Agreement") at ¶ 55; ECF No. 43-1 at 5.) This leaves a net settlement amount of $97,561.99. (ECF No. 43-1 at 3.)

The net settlement amount will be disbursed to the class members on a pro rata basis based on the total number of pay periods worked by the settlement class members during the class period. (Settlement Agreement at ¶ 55(e)(ii).) Based on plaintiff's current estimates of the net settlement funds, the average amount class members are expected to recover is $2,567.42, with the largest payment to any class member estimated to be $6,182.98. (ECF No. 43-1 at 6.) The settlement agreement provides for a non-reversionary settlement, and any uncashed checks will be distributed to the California State Controller for deposit in the Unclaimed Property Fund. (Settlement Agreement at ¶ 55(d), (i)).

---

[2]  In the settlement agreement, the parties agreed to up to $12,000 in litigation expenses but have listed the total as $2,588.01 in their pending motion. (ECF No. 43-1 at 5; Settlement Agreement at ¶55(f).)

[3]  The Court cites to the Settlement Agreement included at ECF No. 41-1, as this is the Amended Memorandum of Understanding Regarding Class and PAGA Action Settlement And Release. (ECF No. 41-1.)

1    In the motion for preliminary approval, plaintiff noted that the parties dispute the merits of

2  the case.[4] (ECF No. 30-2 at 7.) Plaintiff calculated defendant's realistic exposure to be

3  approximately $65,000 including appropriate discounts. (Id. ¶¶ 24-53.) In the declaration filed in

4  response to the Court's July 18, 2025 minute order, plaintiff states that defendant's total possible

5  exposure if all damages and full penalties were awarded is $2,089,437.00, composed of actual

6  damages of $521,337.00 and derivative penalties of $1,568,100.00. (ECF No. 48 ¶¶ 8-17.)

7  Defendant has argued that it complied with California law, denies all liability of any kind

8  associated with the claims and allegations, and denies that employees are entitled to any relief.

9  (ECF No. 43-3 ¶ 13; ECF No. 48 ¶ 18.) Thus, defendant argues that its realistic exposure was

10  effectively $0. (Id.) Further, defendant has asserted that it would have continued to assert legal

11  and factual grounds to defend this action. (ECF No. 48 ¶ 19.)

12    Based on this, the Court finds that the amount offered in settlement is reasonable.

13                    **a.    PAGA Penalties Amount Offered in Settlement**

14    The settlement also provides for $12,500 in civil PAGA penalties. (Settlement Agreement

15  at ¶ 55(e)(i).) This is based on 75%, or $9,375.00, being allocated to the LWDA and 25%, or

16  $3,125.00, being allocated to the aggrieved employees. During the hearing, the parties confirmed

17  that the amended statute allocating 65% of the civil penalties to the LWDA and 35% to the

18  aggrieved employees does not apply here. See Cal. Lab. Code § 2699(m). Accordingly, $9,375.00

19  will be allocated to the LWDA and $3,125.00 will be included in the net settlement amount.

20    Although there is no binding authority setting forth the proper standard of review for

21  PAGA settlements, California district courts "have applied a Rule 23-like standard, asking

22  whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in

23

---

24  [4]  In the Court's October 7, 2025 order, the Court ordered the parties to "include further
explanation in their Final Approval motion as to the potential maximum relief in this action if
25  damages and full penalties were to be found cognizable for purposes of assessing whether the
settlement amount results in a recover that is in range of settlements that [have] been approved by
26  California courts." (ECF No. 37 at 15.) The parties did not provide sufficient information
addressing this in their motion, and the Court requested further information in a July 18, 2025,
27  minute order. (ECF No. 46.) On July 22, 2025, plaintiff provided additional information to
address the Court's concern. (ECF No. 48.)
28

1   light of PAGA's policies and purposes.'" <u>Haralson v. U.S. Aviation Servs. Corp.</u>, 383 F. Supp. 3d

2   959, 972 (N.D. Cal. 2019). This standard is derived from the LWDA. In commenting on a

3   proposed settlement including both class action and PAGA claims, the LWDA has offered the

4   following guidance:

5        It is thus important that when a PAGA claim is settled, the relief provided for
         under the PAGA be genuine and meaningful, consistent with the underlying
6        purpose of the statute to benefit the public and, in the context of a class action, the
         court evaluate whether the settlement meets the standards of being "fundamentally
7        fair, reasonable, and adequate" with reference to the public policies underlying the
8        PAGA.

9        <u>O'Connor v. Uber Techs., Inc.</u>, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the

10  LWDA's guidance with approval). Recognizing the distinct issues presented by class actions, this

11  Court is persuaded by the LWDA's reasoning in <u>O'Connor</u> and therefore adopts its proposed

12  standard in evaluating the PAGA portion of the settlement now before the Court. <u>See id.</u>; <u>see,</u>

13  <u>e.g.</u>, <u>Castro v. Paragon Indus., Inc.</u>, 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020); <u>Patel v.</u>

14  <u>Nike Retail Servs., Inc.</u>, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019).

15       The proposed $12,500.00 penalty payment in this case represents 14% of the gross

16  settlement amount. While this is a higher percentage than typically granted, the Court previously

17  approved the payment. (ECF No. 37 at 19-20.) Further, the Court noted the uncertainty of the

18  case and that it was persuaded that PAGA's interests were satisfied given the difficulties plaintiff

19  would have litigating the case and the parties' negotiations efforts. (<u>Id.</u> at 20.) Plaintiff also noted

20  that the LWDA did not comment on the settlement after being notified thereof. (ECF No. 43-3 at

21  10 ¶ 30; 61.)

22       Having reviewed the parties' submission and the terms of the proposed settlement, the

23  Court finds that the settlement amount related to plaintiffs' PAGA claims is fair, reasonable, and

24  adequate in light of PAGA's public policy goals.

25       Thus, the Court finds that the amount offered in settlement of the PAGA claims here

26  weighs in favor of granting final approval of the settlement.

27  ////

28

### 5.    Extent of Discovery Completed and Stage of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." Adoma v. Univ. of Phx., Inc., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004)). The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. Millan v. Cascade Water Servs., Inc., 310 F.R.D. 593, 613 (E.D. Cal. 2015). These concerns are also reflected in Rule 23(e)(2)'s focus on procedural fairness—whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B).

As expressed in the Court's order granting preliminary approval, the Court is satisfied that the parties' negotiations constituted genuine and informed arm's length bargaining. (ECF No. 37 at 14.) The parties engaged in extensive investigation and discovery, including months of negotiations and a settlement conference in June 2022. (Id.; ECF No. 30-1 at 12.) The parties "engaged in a significant exchange of substantive information relating to the Class Members' claims." (ECF No. 43-1 at 13.) Accordingly, the Court concludes that consideration of this factor weighs in favor of granting final approval.

### 6.    Experience and Views of Counsel

As discussed above, Ms. Ross is no longer counsel for the class. Class counsel is now attorneys Mr. Melmed and Ms. Becker. Class counsel has submitted a declaration by Mr. Melmed describing counsel's experience in wage and hour class action litigation. (ECF No. 43-3.) Mr. Melmed submits that he graduated from Loyola Law School, Los Angeles in 2012 and that he has

been a founding and managing shareholder in Melmed Law Group P.C. (Id. ¶¶ 8, 10.) He states

that he represents "thousands of employees in wage and hour class actions, and other

employment-related matters." (Id. ¶ 10.) He states that he has served as class counsel in a variety

of wage and hour class actions and has developed "extensive litigation experience in complex

employment matters." (Id. ¶ 11.) Mr. Melmed has attached a list of cases where his firm has

represented employees in California class actions. (Id.; see id. at 46-57.)

In Mr. Melmed's declaration, he states that Ms. Becker graduated from University of

California, Hastings College of the Law in 2022 and has been practicing labor and employment

law at Melmed Law Group since she passed the bar in November 2022. (Id. ¶ 27.)

The Court finds the view of Mr. Melmed that the proposed settlement is fair and

reasonable weighs in favor of granting final approval. (See id. ¶ 12.)

### 7.    Presence of a Governmental Participant

No government entity participated in this case. However, the settlement agreement

contemplates payment of $12,500 of the settlement amount to the LWDA under PAGA.

(Settlement Agreement at ¶ 55(e)(i).) This too weighs in favor of approval of the settlement. See

Adoma, 913 F. Supp. 2d at 977 (factoring civil PAGA penalties in favor of settlement approval);

Zamora v. Ryder Integrated Logistics, Inc., 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014)

(same).

### 8.    Reaction of the Class Members

"It is established that the absence of a large number of objections to a proposed class

action settlement raises a strong presumption that the terms of a proposed class settlement action

are favorable to the class members." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529 (citing

cases). The presumption that a settlement is fair, reasonable, and adequate is particularly strong

when there is an absence of a single objection to a proposed class action settlement. See id.;

Barcia v. Contain-A-Way, Inc., 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009). "A court may

appropriately infer that a class action settlement is fair, adequate, and reasonable when few class

members object to it." Cruz v. Sky Chefs, Inc., 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19,

2014) (citing Churchill Vill., 361 F.3d at 577).

1     According to plaintiff, no class member has objected to the settlement agreement, the

2     proposed service awards, or to plaintiff's attorney feed request, and not one of the 38 class

3     members chose to opt out. (ECF No. 43-1 at 16.) The parties confirmed at the hearing that there

4     have been no objections to the settlement. Accordingly, consideration of this factor weights

5     significantly in favor of granting final approval.

6                          **9.      Subtle Signs of Collusion**

7          The Court now turns to a review of whether any of the "more subtle signs" of collusion

8     recognized by the Ninth Circuit are present here. See <u>Bluetooth</u>, 654 F.3d at 947.

9          First, the court does not find that class counsel is seeking a disproportionate distribution of

10    the settlement, particularly in light of the fact that the award of attorney's fees sought here—30%

11    of the gross settlement fund—is a common rate in the Ninth Circuit. See <u>Barbosa v. Cargill Meat</u>

12    <u>Sols. Corp.</u>, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved attorneys'

13    fees of approximately one-third of the total settlement).

14         Second, there is no evidence of a "clear sailing" arrangement. There is no evidence that

15    defendant agreed not to contest the amount of attorney's fees.

16         Third, the parties did not arrange for an unawarded amount of fees to revert to defendants.

17    Rather, settlement checks that are not cashed before their expiration will be cancelled with those

18    funds to be transmitted to the California State Controller's Unclaimed Property Fund. (Settlement

19    Agreement at ¶ 55(i).)

20         Based upon its consideration of all of these factors, the court is satisfied that the subtle

21    signs of collusion that the Ninth Circuit has warned of are not present here to warrant rejecting

22    the parties' proposed settlement.

23         In sum, after considering all of the relevant factors, the court finds on balance that the

24    settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e). Accordingly, the Court will

25    grant plaintiff's motion for final approval of the parties' class action settlement.

26    **IV.    ATTORNEY'S FEES, COSTS, AND INCENTIVE PAYMENTS**

27         Included in their motion, plaintiff has submitted a request for awards of attorney's fees,

28    class counsel's litigation expenses, settlement administrator costs to ILYM Group, Inc., and an

incentive award for plaintiff Wells. (ECF No. 43-1.)

    **A.    Attorneys' Fees**

       This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." In re Mercury Interactive Corp. Secs. Litig., 618 F.3d 988, 994 (9th Cir. 2010); In re Wash. Pub. Power Supply Sys. Secs. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorney's fees from the common fund. In re Mercury, 618 F.3d at 994; see also Rodriguez v. Disner, 688 F.3d 645, 655 (9th Cir. 2012); West Publ'g Corp., 563 F.3d at 968.

       The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorney's fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. Id.; Vu v. Fashion Inst. of Design & Merch., 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1007 (9th Cir. 2002). As noted above, the Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases. Id.; see also Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

       Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. Vizcaino, 290 F.3d at 1048-50; see also In re Online DVD-Rental, 779 F.3d at 954-55. Ultimately, however,

"[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. Id. at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); see also In re Online DVD-Rental, 779 F.3d at 955.

Here, the parties' settlement provides that class counsel will seek an award of 30% of the gross settlement fund, equivalent to $52,500. (Settlement Agreement at ¶ 55(f).) The requested 30% fee is higher than the 25% benchmark rate in the Ninth Circuit, but it is not uncommon for awards to be up to 33.3% for wage and hour class actions in the Eastern District of California. See Barbosa, 297 F.R.D. at 450 (listing cases where courts approved attorneys' fees of approximately one-third of the total settlement). In its order tentatively granting preliminary approval of the proposed settlement in this action, the court noted that it did not need to determine whether a 30% award was reasonable at that time because class counsel would eventually move for attorney's fees at a later time. (ECF No. 37 at 16.) The Court found that the anticipated request was "not so disproportionate to the relief provided to the class that it 'calls into question the fairness of the proposed settlement.'" (Id.) In this pending motion, plaintiff contends that a fee award of 30% of the gross settlement fund is reasonable here for several reasons.

Plaintiff asserts that despite the Ninth Circuit's 25% benchmark, courts in the Ninth Circuit have approved awards of fees equal to or above 30% of the overall recovery. (ECF No. 43-1 at 19-20, 22-23) (citing cases). Plaintiff also asserts that class counsel obtained an "excellent" result for the class members in light of the strength of and possible range of recoveries for the claims and the risks posed in continuing with litigation. (Id. at 21.) Plaintiff recognized the potential risk, expense, and complexity posed by litigation, such as class certification, summary judgment, trial and/or on the damages awarded, and an appeal that could take years to litigate. (Id.) Further, defendant denied all claims. (Id.) Plaintiff also states that class

counsel showed "great skill, thoroughness, and conscientiousness in investigating and developing the claims, liability theories, and estimated possible recoveries in the litigation, and otherwise expended great effort" on behalf of the class. (Id. at 22.) Further, the average individual class member's recovery of $2,567.42 is a positive outcome for class members in this case. (Id. at 21.) Plaintiff also contends that no class members objected to the amount of attorney's fees after being provided notice. (ECF No. 43-1 at 18-19.) Plaintiff's request for attorney's fees thus appears to have the support of the class and that support weighs in favor of the requested award.

     The Court next turns to the lodestar calculation in order to cross-check the reasonableness of the requested attorneys' fee award. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" Bond v. Ferguson Enters., Inc., 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting Fernandez v. Victoria Secret Stores, LLC, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier can be applied. "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 549 (S.D. Fla. 1988)); see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

     Here, class counsel asserts that as of the date of filing the motion, it has incurred a total of $19,715.40 in attorney's fees. (ECF No. 43-3 at ¶ 22.) Class counsel anticipated expending more time to prepare for and appear at the final approval hearing, correspond with opposing counsel and the settlement administrator, and communicate with class members. (Id.) In support of their loadstar calculation, class counsel has submitted a chart outlining the hours billed by various firm employees and the applicable billing rates. (Id.) The Melmed Law Group P.C. employees who worked on this matter include: a paralegal with an hourly rate of $258; a second-year attorney with an hourly rate of $473; and a partner with 12 years of experience with an hourly rate of $948. (Id.) Class counsel contends that these rates are supported by the Laffey Matrix. (Id. ¶ 23.)

However, courts in the Eastern District repeatedly decline to use the matrix. See, e.g., Lusk v. Five Guys Enters., LLC, 2023 WL 4134656, at *29 (E.D. Cal. June 22, 2023); Momentum Com. Funding, LLC v. Project Storm, LLC, 2022 WL 2817429, at *9 (E.D. Cal. July 18, 2022). The Court will therefore rely on its own knowledge of customary legal rates in Sacramento and also survey cases in setting a reasonably hourly rate. See Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).

The Court finds that the rate for the attorney with two years' experience is reasonable, but that the rates for the paralegal and the partner do not reflect the prevailing market rate in Sacramento for attorneys of comparable skill, experience, and reputation. See, e.g., Am. Multi-Cinema, Inc. v. Manteca Lifestyle Ctr., LLC, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024) (awarding $700 per hour for partners and $375 per hour for associate attorneys); Gong-Chun v. Aetna Inc., 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates and between $490 and $695 per hour for senior counsel and partners); Velasco v. Mis Amigos Meat Market, Inc., 2013 WL 5755054, at *12 n.4 (E.D. Cal. Oct. 23, 2013) (approving a partner hourly rate of $650, a senior associate hourly rate of $495, and a junior associate hourly rate of $395). Accordingly, the Court reduces the hourly rate for the paralegal to $200 and the hourly rate of the partner with 12 years' experience to $700.

Based on this, the total amount for Mr. Melmed is reduced to $10,500, and the total amount for the paralegal is reduced to $740. The loadstar multiplier therefore increases to 3.33. Even with the increase in the loadstar multiplier, the Court still finds that the lodestar cross-check supports the requested award of $52,500 in attorney's fees, an amount equal to 30% of the gross settlement fund in this case. Therefore, the Court will approve an award of $52,500 in attorneys' fees.

### B.   Costs and Expenses of Class Counsel

Additionally, class counsel seeks to recover the costs and expenses advanced while prosecuting this litigation. Such awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." In re Immune Response Secs. Litig., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include

1  reimbursements for: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone,

2  and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class

3  action notices; 8) experts, consultants, and investigators; and 9) mediation fees." Id.

4      Here, class counsel request reimbursement in the amount of $2,588.01. (ECF No. 43-1 at

5  5; ECF No. 43-3 at 59.) The Court has reviewed class counsel's declaration and finds all the

6  charges incurred to be reasonable. Accordingly, the Court will approve the reimbursement of

7  costs and expenses in the amount requested.

8      **C.    Incentive Award**

9      Courts frequently approve "service" or "incentive" awards in class action cases. West

10  Publ'g Corp., 563 F.3d at 958-59. Generally speaking, incentive awards are meant to recognize

11  the effort of class representatives "for work done on behalf of the class, to make up for financial

12  or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

13  willingness to act as a private attorney general." Id. The district court evaluates each award

14  individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the

15  interests of the class, the degree to which the class has benefitted from those actions, . . . the

16  amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e]

17  fear[s of] workplace retaliation." Staton, 327 F.3d at 977 (alterations in original) (citation

18  omitted).

19      The courts of the Ninth Circuit typically find incentive awards of $5,000 to be

20  "presumptively reasonable." See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 457, 463

21  (9th Cir. 2000) (endorsing $5,000 service awards to named representatives); Bellinghausen v.

22  Tractor Supply Co., 306 F.R.D. 245, 266-67 (N.D. Cal. 2015) (collecting cases stating that in the

23  Northern District, an incentive payment of $5,000 is presumptively reasonable); In re Toys R Us-

24  Del., Inc. FACTA Litig., 295 F.R.D. 438, 470-72 (C.D. Cal. 2014) (awarding plaintiffs $5,000

25  each "consistent with the amount courts typically award as incentive payments").

26      Here, plaintiff seeks an incentive award of $5,000 for her service in this action. In the

27  order granting preliminary approval, the Court noted that this incentive award was 2.9% of the

28  gross settlement amount, which is on the higher side. (ECF No. 37 at 10.) This award is about

1  double what the average class member can expect to receive. However, plaintiff spent significant

2  time and personal risk to protect the interest of the class. (ECF No. 43-1 at 16.) Plaintiff provided

3  class counsel with a comprehensive history of her employment with defendant and supplied class

4  counsel documents including defendant's policies, sample wage statements, and information n

5  defendant's piece rate pay. (Id.) Plaintiff prepared for the settlement conference and was available

6  during the conference to answer questions. (Id. at 17.) At the hearing, plaintiff's counsel

7  approximated that plaintiff spent 23 to 28 hours participating in the case.

8      Because plaintiff has spent considerable time participating in this case and because $5,000

9  has been found to be a reasonable incentive award in this district, the Court will award $5,000 to

10  plaintiff.

11      **D.    Settlement Administrator Costs**

12      The court has approved appointment of ILYM Group, Inc. as the settlement administrator

13  in this action. In the settlement agreement, the parties estimated that the costs of administration

14  would be $4,850.00. (Settlement Agreement at ¶ 55(g).) This is the cost plaintiff is requesting.

15  (ECF No. 43-1 at 5.) The Court finds these administration costs reasonable and will direct

16  payment in the requested amount.

17                    **<u>ORDER</u>**

18      For the above reasons, it is HEREBY ORDERED that:

19  1.    Plaintiff's motion for final approval of the class action settlement (ECF No. 43) is

20         GRANTED, and the court approves the settlement as fair, reasonable, and

21         adequate;

22  2.    Plaintiff's request for an award of attorney's fees and costs, incentive award, and

23         settlement administrator costs is also GRANTED;

24  3.    The court awards the following sums:

25         a.    Class counsel shall receive $52,500.00 in attorney's fees and $2,588.81 in

26              expenses;

27         b.    Plaintiff Mariah Wells shall receive $5,000.00 as an incentive payment;

28         c.    ILYM Group, Inc. shall receive $4,850.00 in settlement administration

                            20

1    costs; and

2    d.    The parties shall direct payment of 75% of the settlement allocated to the

3    PAGA payment, or $9,375.00 to the LWDA as required by California law,

4    and the remainder of the PAGA payment, $3,125.00, shall be included in

5    the net settlement fund;

6    4.    The parties are directed to effectuate all terms of the settlement agreement and any

7    deadlines or procedures for distribution set forth therein;

8    5.    This action is dismissed with prejudice in accordance with the terms of the parties'

9    amended settlement agreement, with the court specifically retaining jurisdiction

10    over this action for the purpose of enforcing the parties' settlement agreement; and

11    6.    The Clerk of the Court is directed to close this case.

12    Dated:  July 25, 2025

13    _____

14    CAROLYN K. DELANEY
      UNITED STATES MAGISTRATE JUDGE

15

16

17    5, well0994.21

18

19

20

21

22

23

24

25

26

27

28

21